UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GREENWAY II, LLC as successor to NWW-1985 TRUST | 1:19-cv-04093 |
| Plaintiff, | |
| - against - | **COMPLAINT** |
| WILDENSTEIN & CO. INC., | |
| Defendant. | Trial by Jury is Demanded |

Plaintiff **GREENWAY II LLC** as successor to **NWW-1985 TRUST,** by and through its

attorneys, Zukerman Gore Brandeis & Crossman, LLP, as and for its **COMPLAINT** against

defendant **WILDENSTEIN & CO., INC.**, hereby says the following:

## INTRODUCTION

1.      In 1985, plaintiff's predecessor, NWW-1985 Trust (the "Trust") purchased what

was represented to be an original oil painting by the French Impressionist painter Pierre Bonnard

("Bonnard") from defendant Wildenstein & Co., Inc. ("Wildenstein"). Wildenstein is one of the

world's foremost art galleries, with a well-established reputation as an expert in French

Impressionist art, and a particular expertise in the works of Bonnard.  Wildenstein represented to

the Trust, and its Trustee Neil W. Wallace ("Wallace") that the artwork at issue, entitled *Still Life*

*with Basket of Fruit* (the "Bonnard Painting") was an original Bonnard artwork, painted by

Bonnard himself.  In reliance on Wildenstein's representation, buttressed by its decades-old

reputation for expertise and its long and intimate familiarity with Bonnard's artworks, the Trust

purchased *Still Life with Basket of Fruit* for the price of $275,000. It has now been established

that the work is not a Bonnard, but is instead a clever forgery.  Wildenstein, then and now one of

the world's leading experts in Bonnard artworks, and moreover, a gallery with access to the

authoritative catalogue of genuine Bonnard paintings – in which *Still Life with Basket of Fruit* was not listed – actually knew or recklessly failed to know that it had sold a forged artwork to the Trust and that its representations were therefore knowingly or recklessly false.   The Trust and Wallace reasonably relied on Wildenstein's representation that the Bonnard Painting was actually a genuine Bonnard, and has been damaged as a result. Plaintiff Greenway II LLC ("Greenway"), as the Trust's successor, brings this action for common law fraud in order to recover the purchase price it paid for the Bonnard Painting, plus out-of-pocket expenses incurred over the years in insuring, preserving and caring for the artwork, together with statutory interest from the date of the fraud, among other things.

## THE PARTIES

2.      Plaintiff Greenway II LLC is a limited liability company organized and existing under the laws of the State of Nevada. Greenway's members are individual trusts.  The trustees of all of the member trusts are citizens of Nevada and Maine.  Greenway brings this action as successor to the Trust, which transferred the Bonnard Artwork to it in 2017 for estate planning purposes.

3.      Defendant Wildenstein, a corporation organized and existing pursuant to the laws of the State New York is a citizen of the State of New York. Wildenstein's principal place of business is located at 689 Fifth Avenue, New York, N.Y.  Wildenstein was organized in 1924 as the United States component of the Wildenstein family's international art business empire, the parent of which, Wildenstein & Co. was organized in France in the late 19th century. Wildenstein is internationally known for its scholarly expertise in the works of French Impressionist masters; Daniel Wildenstein, for instance, the father of the current chief executive of Wildenstein is the author of the five-volume *catalogue raisonne* of the works of Claude Monet.  In addition to

maintaining a particular expertise in the artworks of Bonnard, Wildenstein acquired the contents

of Bonnard's estate following the death of the artist in 1947.

## JURISDICTION AND VENUE

4.      Jurisdiction is proper in this judicial district pursuant to 28 U.S.C. § 1332(a)

because the parties are citizens of different states and the amount in controversy exceeds the

principal sum of seventy-five thousand dollars ($75,000) exclusive of costs and interest.  As set

forth above, Greenway is a citizen of the State of Nevada, and its members are all individual

trusts whose trustees are citizens of the States of Nevada and Maine. Wildenstein is a citizen of

the State of New York.  Venue is proper in this judicial district pursuant to 28 U.S.C. §1391

because defendant resides in this judicial district and a substantial part of the events or omissions

giving rise to this claim occurred in this judicial district.

## THE FACTS

5.      On or about June 21, 1985, the Trust, through Wallace purchased the Bonnard

Painting in New York from Wildenstein's New York gallery,  which was then located at 19 East

64th Street, New York, NY.   In order to induce Wallace and the Trust to purchase the Bonnard

Painting, Wildenstein unequivocally represented to Wallace that the Bonnard Painting was a

genuine artwork by Bonnard, that it was signed by Bonnard in the work's lower right corner, and

that Bonnard painted it in about 1930.  At about 1930, it was known that Bonnard was painting

still life paintings like the Bonnard Painting, containing elements similar to those that appear in

the Bonnard Painting. Wildenstein's well-known expertise in the works of French impressionist

artists, coupled with its long international reputation, made this representation extremely

credible.

6.      As part of the purchase transaction, Wildenstein also provided the Trust with an invoice, and related documentary information, which corroborated the representations made to induce the Trust to acquire the Bonnard Painting. The invoice, dated June 21, 1985, repeated that the Trust was acquiring "One painting by PIERRE BONNARD" (emphasis in original) painted circa 1930, and signed "Bonnard" in the lower right corner of the artwork.

7.      Under provenance, the Wildenstein invoice reported that the work had been in the collection of Mr. and Mrs. Morris W. Haft, and acquired in 1965 by Ogden Phipps through an auction conducted by Trosby Galleries, Palm Beach, Florida, on or about February 9, 1965.  The invoice appears to have reported that Ogden Phipps subsequently conveyed the Bonnard Painting to a "Private collection, New York" at a time not identified.  The invoice appears to reflect that Wildenstein acquired the Bonnard Painting, or took consignment thereof, from the "Private collection, New York."

8.      The Trust paid the sum two hundred seventy-five thousand dollars ($275,000) for the Bonnard Painting, by a check dated on or about June 28, 1985.  Since acquiring the Bonnard Painting, Greenway and the Trust have incurred other expenses in connection in insuring and conserving the painting.

9.      The Trust justifiably relied on Wildenstein's representations because Wildenstein was one of the world's leading galleries engaged in the sale of French Impressionist artworks, and specifically expert in the works of Bonnard, who died in 1947.  Wildenstein's current website touts that the gallery is not merely a retailer of art, but an arts institution that, long ago, initiated a "systematic program of research and publication" as an adjunct to the sale of art. The website advertises that Wildenstein's "singular focus" on historical research for the works it displayed and sold came to define  "a research methodology for the production of the celebrated

catalogues raisonees" Wildenstein produced, which "set an industry standard." The father of Wildenstein's current chair, Daniel Wildenstein, for example, is the author of the definitive five-volume *catalogue raisonee* on the artworks of Claude Monet.

10.     A *catalogue raisonee* is a listing of all of the recognized works of an artist, generally prepared following the artist's death. Preparing a *catalogue raisonee* often takes years of research into the artist's oeuvre, and takes into account such things as existing sales records, exhibition records, and the records kept by the artist. *Catalogues raisonee* are intended to be a comprehensive guide to the genuine works produced by the artist, and in determining whether an artwork is genuine or a forgery, *catalogue raisonees* are generally regarded as authoritative. If an artwork is not listed in the artist's *catalogue raisonee*, in the ordinary case, the artwork is conclusively understood to be inauthentic, and accordingly it has no market value. *Catalogues raisonee* are an invaluable resource for art dealers who wish to sell an artist's work, since inclusion of a work in the *catalogue raisonee* is compelling prima facie evidence of the work's authenticity. Its absence from the *catalogue raisonee* is a bright red flag that imposes upon the owner or seller an obligation to dig further in order to obtain the full and accurate provenance of the work..

11.     A catalogue raisonee was published in 1974 for the works of Bonnard, co-authored by Jean Dauberville and Henry Dauberville. A later revision of the Bonnard catalogue raisonee added Guy-Patrice Dauberville, the son of Jean Dauberville, as a co-author. If a work thought to be a Bonnard is not included in the catalogue raisonee, it will not be recognized as authentic.

12.     Upon information and belief, at all relevant times preceding its sale of the Bonnard Painting to the Trust, as a major dealer in Bonnard's artworks, Wildenstein possessed a

copy of the Bonnard *catalogue raisonee* or had access thereto.  The Bonnard Painting was not listed in the *catalogue raisonee* in 1985, or ever. If Wildenstein had reviewed the authoritative Bonnard *catalogue raisonee* prior to selling the Bonnard Painting to the Trust, Wildenstein would have known that the Bonnard Painting was not regarded as authentic. Whether or not Wildenstein consulted the Bonnard *catalogue raisonee,* had the Trust known that the Bonnard Painting was not listed therein, it would not have acquired the Bonnard Painting for any price. If Wildenstein reviewed the *catalogue raisonee* and discovered that the Bonnard Painting was not listed there, its failure to advise the Trust was a material omission that operated as a fraud on the Trust. If Wildenstein failed to review the *catalogue* before selling the work to the Trust, its failure was reckless and defrauded the Trust.

13.     Upon information and belief, Wildenstein had no records of any kind demonstrating that the Bonnard Painting was authentic.  It had no records reflecting the provenance of the Bonnard Painting that pre-dates its 1965 auction in Palm Beach.

14.     Upon information and belief, Wildenstein did not take any other steps to determine the authenticity of the Bonnard Painting.  It has been reported that Wildenstein purchased the contents of Bonnard's Estate from Bonnard's heirs in 1950.  Upon information and belief, the contents of the Bonnard Estate acquired by Wildenstein contained no reference to the Bonnard Painting, a fact that would only have been known by Wildenstein. Indeed, if Wildenstein had researched the Bonnard Painting's provenance, through well-respected archives, including, among other places, the Smithsonian Institution, Wildenstein would have discovered that no record of the Bonnard Painting exists prior to the early 1950's, a full 20 years after the work was supposed to have been painted.

15.     Wildenstein did not advise the Trust or Wallace that it had no provenance information for the Bonnard Painting that pre-dated 1965, that the Bonnard Painting was not referenced in the Bonnard *catalogue raisonee*, and therefore could not be presumed authentic, or that the contents of the Bonnard Estate owned by Wildenstein contained no information at all about the Bonnard Painting.

16.     Since the publication of the Bonnard *catalogue raisonee*, the world's leading academic authority on the works of Bonnard has been Guy-Patrice Dauberville ("Dauberville"). In 2018, preparatory to auctioning the Bonnard Painting and other artworks, Greenway sent the Bonnard Painting to Dauberville for authentication purposes.  By letter dated October 26, 2018, Dauberville advised that the Bonnard Painting was not authentic.

17.     Upon information and belief, the Bonnard Painting had also been submitted to Dauberville in approximately 1974 for purposes of obtaining an opinion as to its authenticity and inclusion in the *catalogue raisonee*. Upon information and belief, Dauberville refused to authenticate the painting in 1974.  Had Wildenstein consulted with Dauberville at any time prior to selling the Bonnard Painting to the Trust in 1984, Dauberville would have advised Wildenstein that the painting was inauthentic and had been rejected for inclusion in the *catalogue raisonee*. It was, at a minimum, reckless for Wildenstein to have failed to take this rudimentary step before representing the authenticity of the Bonnard Painting to the Trust.

18.     Because the Bonnard Painting is not listed in Bonnard's catalogue raisonee, and because Dauberville has now reviewed it twice, each time refusing to find it authentic, the Bonnard Painting is now worthless. The Trust and Greenway as its successor, have been damaged in the amount of the purchase price, the additional costs in upkeep expended in respect of the Bonnard Painting, and interest from the date the Trust and Greenway were defrauded.

19.     By virtue of the foregoing, Greenway, in its own capacity and as successor to the Trust, has been defrauded.  It is entitled to judgment.

20.     Trial by jury is hereby demanded.

**WHEREFORE**, plaintiff Greenway II LLC hereby demands judgment in the amount of two hundred seventy-five thousand dollars ($275,000), plus additional expenses to be proven at trial but believed to exceed fifty thousand dollars ($50,000) plus interest at the statutory rate dating from June 21, 1985; and

For taxable costs and disbursements, reasonable attorneys' fees, and for such other and further relief as to the Court seems just and proper.

Dated: New York, New York
        May 7, 2019

Ted Poretz
Zukerman Gore Brandeis & Crossman, LLP
*Attorneys for Plaintiff*
Eleven Times Square
New York, N.Y. 10036
Tel.: (212) 223-6700

*4831-3450-4585, v. 1*