UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

───────────────────────────────x

GREENWAY II, LLC as successor to
NWW-1985 TRUST,

        Plaintiff,

    -against-

WILDENSTEIN & CO. INC.,

        Defendant.

───────────────────────────────x

No. 19-cv-4093 (CM) (RWL)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/9/2022

## MEMORANDUM ORDER AND DECISION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

McMahon, J.

    Plaintiff Greenway II, LLC's ("Greenway" or "Plaintiff") brings a single claim for fraud against Defendant Wildenstein & Co. Inc. ("W&Co." or "Defendant"), a New York art dealership located on Fifth Avenue in Manhattan. Plaintiff alleges that W&Co. defrauded plaintiff and its predecessor, the NWW 1985 Trust (the "Trust"), when it sold an inauthentic Pierre Bonnard ("Bonnard") painting, entitled *Still Life with Basket of Fruit* ("*Basket of Fruit*" or the "Painting"), to the Trust in June 1985. Plaintiff seeks to recoup the amount paid for the painting, $275,000, plus expenses, statutory interest, costs, and fees.

    Defendant moves for summary judgment pursuant to Fed. R. Civ. P. 56 and asks that this Court dismiss Plaintiff's Amended Complaint in its entirety. (*See* Dkt. No. 57). Defendant moves for summary judgment on two grounds: (1) Plaintiff's claims are barred by the applicable statute

1

of limitations and (2) Plaintiff cannot, as a matter of law, show reasonable reliance on W&Co.'s representations of the Painting's authenticity. The motion is opposed.

For the reasons that follow, Defendant's motion for summary judgment is GRANTED.

## FACTUAL BACKGROUND[1]

### A. The Parties

Plaintiff Greenway is a limited liability company organized under the laws of Nevada and successor in interest to the NWW 1985 Trust. (AC ¶6). Plaintiff's members are individual trusts, which are citizens of Nevada and Maine. (*Id.*). The NWW 1965 Trust transferred the painting to Greenway in 2017 for estate planning purposes, at which time it conveyed all rights, title and interest in the artwork; the Trust also conveyed all claims, rights and causes of action that the Trust had arising from or relating to the Painting. (*Id.*).

Defendant W&Co. is a New York corporation and art dealership with its principal place of business in New York. (AC ¶7).

### B. Relevant Non-Parties

Non-party Neil Wallace ("Wallace") is the Trustee of the Trust. It was Wallace, acting on behalf of the Trust, who purchased the inauthentic Bonnard painting from W&Co. in June 1985.

Non-party Kenworth Moffett, now deceased, was a respected curator for contemporary art at the Boston Museum of Fine Art. Wallace retained Moffett in 1985 "as a consultant in [his] acquisitions," and Moffett introduced Wallace to W&Co. in 1985. (Dkt. No. 59-9, at 18:23-24).

---

[1] Unless specifically noted otherwise, the facts contained in this section are undisputed and are drawn from the parties' Rule 56.1 statement of undisputed facts and response statement. (*See* Dkt. Nos. 60, 63).

### C. The Sale of the Basket of Fruit Painting

In 1985, Wallace's acquisition consultant, Moffett, suggested to Wallace that he "might be interested in" the *Basket of Fruit* painting. (*See* Dkt. No. 59-9, at 20:15-18). Moffett accompanied Wallace to view the painting at W&Co. and Wallace did, indeed, like the Painting and wish to purchase it.

Prior to the sale, W&Co. provided Wallace with a fact sheet containing information on the *Basket of Fruit*, as well as a second Bonnett work entitled, *Plat de Pêches*. (*See* Dkt. No. 59-5). The fact sheet stated that both paintings were Bonnard works and included the description, provenance and references for the paintings.

"References" are catalogs where the artist's work is or has been listed. A significant "reference" for Bonnard works is the "Bonnard *catalogue raisonné*." The Bonnard *catalogue raisonné* is a scholarly listing of all recognized Bonnard works. It was originally co-authored by Jean Dauberville and Henry Dauberville, and later edited by Guy-Patrice Dauberville, the son of Jean Dauberville. (AC ¶¶17-18). Plaintiff explains that Guy-Patrice Dauberville is "the single most authoritative expert in the world on the works of Bonnard" (Dkt. No. 63, at 8) and the Bonnard *catalogue raisonné* is "intended to be a comprehensive guide to the genuine works produced by the artist." (AC ¶17). Absence from the *catalogue raisonné*, Plaintiff alleges, is a "bright red flag of inauthenticity," while inclusion of a work in the *catalogue raisonné* is "compelling . . . evidence of the work's authenticity." (*Id.*). Plaintiff explains in the complaint that "If a work thought to be a Bonnard is not included in the *catalogue raisonné*, it will not be recognized as authentic." (*Id.* at ¶18).

The fact sheet provided to Wallace in 1985, prior to the sale of the Painting, states that *Plat de Pêches* appeared in the Bonnard *catalogue raisonné* but that *Basket of Fruit* did not. The fact

3

sheet specified that *Basket of Fruit* was attributed to Bonnard in a 1965 Trosby Galleries auction catalogue. At that auction, Ogden Phipps purchased the painting, which had previously belonged to Mr. and Mrs. Morris W. Haft. (*See* Dkt. No. 59-5). In advising Wallace about the "provenance of the work," Moffett told him that Ogden Phipps was a "major collector and respected collector." (Dkt. No. 59-12, at 26:21-27:3).

On June 21, 1985, W&Co. issued an invoice to Wallace for the Painting, on Moffett's instruction. (*See* Dkt. No. 59-6). The invoice contained the information about the Painting's provenance that appeared on the fact sheet; it made *no* reference to the Bonnard *catalogue raisonné*. (*Id.*).

On June 22, 1985, Moffett commissioned and issued a "condition report" for the Painting for Wallace, explaining the results of an inspection of the Painting and advising that the Painting was in good condition for sale. (*See* Dkt. No. 59-10 at 35:16-21); Dkt. No. 59-11).

On June 28, 1985, the Trust sent W.&Co. a check to purchase *Basket of Fruit* for $275,000.

### D. The Auction House Christie's, Inc. Appraises the *Basket of Fruit* Painting

Beginning 2007 and through 2017, Wallace obtained at least eight appraisals of *Basket of Fruit* from the auction house, Christie's, Inc. ("Christie's"). Christie's valued the Painting at $3 million in 2007 and $4 million in 2017. (*See* Dkt. No. 59-1). Each report from Christie's contained a description of the Painting, the appraisal value, and the following disclaimer regarding the Painting: "Not included in currently accepted catalogue raisonné, assumes that the recognized authority on the artist would confirm attribution." (*Id.*). The 2007 appraisal with the notation is copied below.

IMPRESSIONIST AND MODERN ART

PIERRE BONNARD $3,000,000
Still Life with Basket of Fruit
signed Bonnard (lower right)
oil on canvas
17 5/8 x 23 1/2 inches
Painted in 1930

(Not included in currently accepted catalogue raisonne;
assumes that the recognized authority on the artist
would confirm attribution)

(Dkt. No. 59-1, at G-0025).

Wallace testified in his deposition that he reviewed the Christie's reports beginning in 2007 and recalled reading that the Painting was not in the Bonnard *catalogue raisonné*. (Dkt. No. 59-13, at 52:8-15). He admits that he "should have been aware" that the Painting was not in the Bonnard *catalogue raisonné* "since in all of Christie's appraisals there was a comment at the bottom . . . I realize in retrospect that I should have been [aware]." (*Id.* at 45:3-15). Wallace states that he never asked or discussed with Christie's "the significance of the fact that the work was not included in the currently-accepted *catalogue raisonné*. . ." (*Id.* at 52:18-53:4).

### E. Plaintiff Greenway Consigns the Wallace Art Collection to Christie's for Auction

In 2018,[2] Greenway consigned the combined art collection of Neil Wallace and his brother, Monte Wallace, to Christie's for auction under the title, ""Hidden Treasures: Impressionist and Modern Masterpieces from an Important Private Collection." (Dkt. No. 59-8; Dkt. No. 59-15, at 65:23-67:14). The collection included pieces by Monet, Van Gogh and Bonnard. (Dkt. No. 59-8).

---

[2] As explained previously, the Trust transferred to Painting to Plaintiff in 2017 for estate planning purposes.

In connection with the 2018 auction, Christie's sent *Basket of Fruit* to Guy-Patrice Dauberville – the "recognized authority" on Bonnard, as co-author of the *catalogue raisonné* – for authentication. In October 2018, M. Dauberville responded by letter that the Painting was not "an authentic work by Pierre Bonnard." (*See* Dkt. No. 59-16). As a result, Christie's withdrew the Painting from the sale.

In May 2019, Plaintiff filed this action against W&Co. for fraud.

## STANDARD

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant[s] [are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. At summary judgment, the movants bear the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004).

Once the movants meet that burden, the non-movants may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 248; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). To survive summary judgment, the non-movants must present concrete evidence and rely on more than conclusory or speculative claims. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980). In assessing the record to determine whether genuine issues of material fact are in dispute, a court must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. *See Parkinson v. Cozzolino*, 238 F.3d 145, 150 (2d Cir. 2001).

## DISCUSSION

### I. Plaintiff's Fraud Claim Is Time Barred

"Under New York law, the time within which an action based upon fraud must be commenced is 'the greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 154 (2d Cir. 2012) (citing C.P.L.R. 213(8)).

"'[W]here the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth, and shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him.'" *Gutkin v. Siegal*, 85 A.D.3d 687, 688 (1st Dep't 2011) (quoting *Armstrong v McAlpin*, 699 F.2d 79, 88 (2d Cir 1983)). "'The test as to when fraud should with reasonable diligence have been discovered is an objective one.'" *Id.* (quoting *Armstrong*, 699 699 F.2d at 88). If the facts "establish that a duty of inquiry existed and that an inquiry was not pursued," dismissal pursuant to the two-year discovery rule is proper. *See Koch*, 699 F.3d at 155-56.

Here, Defendant argues that Wallace, as Trustee, and the Trust were on inquiry notice of the fraud claim at least twelve years before Plaintiff filed suit (as successor). Specifically, beginning in 2007, Christie's began issuing appraisals of the Painting, each of which explicitly informed Wallace that the Painting was not listed in the Bonnard *catalogue raisonné* and that its authenticity was only "assume[d]." Christie's issued at least eight appraisals to Wallace over a decade stating that *Basket of Fruit* was "Not included in currently accepted catalogue raisonné . . ." (Dkt. No. 59-1). Wallace agreed in his deposition that he reviewed all of the Christie's reports and recalled reading as early as 2007 that the Painting was not listed in the Bonnard *catalogue*

7

*raisonné*. He admits, as a result, that he "should have been aware" that the Painting was not listed in the catalog of the artist's genuine works. Yet, Wallace admits he never asked anyone about the significance of the notations in the Christie's appraisals.

Despite Wallace's not making any inquiry regarding the Christie's notations, the Painting's absence from the *catalogue raisonné* now figures prominently in the Plaintiff's complaint. Indeed, twelve of the complaint's thirty-two paragraphs reference the importance of the *catalogue raisonné* and the significance of the Painting's absence from that catalog. Plaintiff explains that the Bonnard *catalogue raisonné* is the single most "comprehensive guide to the genuine works produced by the artist," that absence from the Bonnard *catalogue raisonné* is a "bright red flag of inauthenticity" and that "If a work thought to be a Bonnard is not included in the *catalogue raisonné*, it will not be recognized as authentic." (*See* AC ¶¶17-18). Plaintiff alleges that Defendant "opted to ignore that fact and sell the Painting to the Trust as authentic." (*Id.* ¶21).

Yet, Plaintiff argues that the Christie's notations did not trigger any duty to inquire. Plaintiff explains that it was reasonable for Wallace to ignore the notations because he could take "great comfort from the fact that the Painting had increased in value . . . since its purchase . . . ." (Dkt. No. 61, at 15). Because the Painting was appraised as valuable, Plaintiff argues that Wallace "had no reason to suspect he had been defrauded" until M. Dauberville confirmed in October 2018 that the Painting was not authentic. (*Id.*).

In the opinion of the court, no reasonable trier of fact could find otherwise than that the circumstances "are such as to suggest to a person of ordinary intelligence" that some investigation – even a minimal inquiry – was warranted into the Christie's notations that the work was not listed in the Bonnard *catalogue raisonné*. This is particularly true where Plaintiff's allegations of fraud are now founded in large part on the Painting's absence from the Bonnard *catalogue raisonné*. If

8

absence from the Bonnard *catalogue raisonné* forms the basis of Plaintiff's allegations of fraud, the notations that informed Wallace of that same absence should have triggered at a minimum a duty to make inquiry into what Christie's meant by what it was saying. Wallace essentially admits that he "shut[] his eyes to the facts which call for investigation" when he ignored the notations and "omit[ted] that inquiry when it would have developed the truth" when he failed to inquire why the Painting was not included in the comprehensive guide of genuine works of the author. *See Gutkin*, 85 A.D.3d at 688.

As Defendant points out, a plaintiff is on inquiry notice where he has possession of documents or information revealing "the bases for what [Plaintiff] now claims to be fraud." *Anderson v. Greene*, No. 14 CIV. 10249 (KPF), 2017 WL 3503686, at *10 (S.D.N.Y. Aug. 16, 2017), *aff'd*, 774 F. App'x 694 (2d Cir. 2019). For example, in *Greene*, my colleague Judge Failla denied the plaintiff's motion for leave to amend as futile where the plaintiff failed to plead a timely claim for fraud under New York's two-year "discovery rule." *Id.* at *11. The Court found that each of plaintiff's allegations of a fraudulent investment scheme "implicates a duty of inquiry, and thus . . . the two-year statute of limitations applies" – specifically, plaintiff alleged that he received "personalized [financial] statements" over the years, which he claimed defendants "used . . . to conceal their wrongdoing" but he "also claims that these statements *exposed* that same wrongdoing." *Id.* at *3, 11. Because plaintiff received statements that allegedly exposed the fraud alleged in the complaint, the Court found that the "Plaintiff should have been on notice of Defendants' fraudulent investment scheme more than two years before Plaintiff filed the Complaint." *Id.* at *11. The "periodic reminders that Defendants were defrauding him" triggered the running of the statute of limitations. *Id.* at *10.

Similarly, in *Gutkin*, the court dismissed plaintiff's fraud claim as time-barred where

plaintiff alleged that he was deceived as to the percentage of revenue he would receive on partnerships in which he had invested, but

> beginning in the first year after his investment, plaintiff received quarterly drilling reports which reflected the exact percentage of net drilling revenue each partnership received from each well. Thus, if plaintiff believed that each partnership was entitled to receive 60% of the net revenue, the quarterly reports put him on notice that he was either in error or had been defrauded. By his own account, plaintiff never sought clarification of the quarterly reports.

*Gutkin, supra.*, 85 A.D. at 688.

Plaintiff argues these cases are distinguishable because the information and documents the plaintiff received in these cases was "completely at odds" with the plaintiff's "reasonable expectation;" Plaintiff explains, "These authorities all require a red flag . . . in order to trigger a duty to inquire further." (Dkt. No. 61, at 14). Plaintiff argues that the legend in the Christie's appraisals is *not* a red flag, and "No person of ordinary intelligence . . . would infer from this legend the probability that he has been defrauded." (*Id.* at 14-15 (quotation omitted)).

I disagree. Plaintiff's own complaint alleges that the Painting's absence from the Bonnard *catalogue raisonné* was a "bright red flag of inauthenticity." (AC ¶17). It follows that the Christie's notations were a "periodic reminder" that the work was not and had never been authenticated for inclusion in the *catalogue raisonné*. Christie's quite explicitly said that its valuation was predicated on an assumption that "the recognized authority" would confirm authenticity. That language should strike any reasonable reader as a clue that the painting was not being authenticated – certainly not by Christie's. Had Plaintiff inquired as to those notations, he would have readily discovered that the Painting was not recognized as a genuine Bonnard.

There was even a red flag when Plaintiff purchased the painting. W&Co. did not hide the fact that the Painting did not appear in the *catalogue raisonné*. W&Co. provided a fact sheet to Wallace prior to the sale of the Painting, which states that *Plat de Pêches* appeared in the Bonnard

10

*catalogue raisonné* but that *Basket of Fruit* did not. And when the painting was invoiced, W&Co stated that *Basket of Fruit* appeared only in the 1965 Trosby Galleries auction catalogue, not in the Bonnard *catalogue raisonné*. That, too, should have alerted Wallace to the fact that the painting's authenticity was at the very least in doubt – and caused him to make inquiry as soon as he received the fact sheet, even before consummating the purchase.

For this reason, Plaintiff's 2019 complaint was time barred when filed. For that reason alone, it must be dismissed.

## II.   Plaintiff Cannot Establish Reasonable Reliance as a Matter of Law

Defendant raises an alternate ground for dismissal in its motion for summary judgment – that Plaintiff cannot establish reasonable reliance as a matter of law. The Court agrees that even if the Plaintiff's claim were not time barred, Defendant would be entitled to summary judgment on this alternative ground.

Reliance is not reasonable "if the facts represented are not matters peculiarly within the party's knowledge, and the other party has the means available to him of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations." *ACA Galleries, Inc. v. Kinney*, 928 F. Supp. 2d 699, 703 (S.D.N.Y. 2013) (quoting *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 322 (1959)), *aff'd*, 552 F. App'x 24 (2d Cir. 2014). In the context of an art sale, where a buyer "has access to information regarding a painting's authenticity, but fails to pursue the information, [the buyer] cannot reasonably rely on defendant's representations or omissions regarding the painting" as a matter of law. *Id.*; *see Levin v. Gallery 63 Antiques Corp.*, No. 04 CIV. 1504 (KMK), 2006 WL 2802008, at *9 (S.D.N.Y. Sept. 28, 2006).

Here, Plaintiff does not dispute that Wallace retained respected art curator, Moffett, "as a consultant in [his] acquisitions." (Dkt. No. 59-9, at 18:23-24, 26:21-27:3); Plaintiffs admits that Moffett introduced Wallace to W&Co., accompanied Wallace to view the Painting, discussed the Painting's provenance with Wallace and commissioned a condition report of the Painting. (*See* Dkt. No. 59-12, at 26:21-27:3). Moffett was no mere autodidact; he was the curator for contemporary art at the Museum of Fine Art in Boston. Plaintiff's expert Martha Parrish agreed in her deposition that a curator like Moffett would have known what a *catalogue raisonné* was. (*See* Dkt. No. 59-14, at 120:9–12 ("I can only assume that anyone in the museum world who is a curator would know what a catalogue raisonne is."")).[3] Additionally, as noted above, it is undisputed that W&Co. did not hide from Plaintiff the fact that the Painting did not appear in the *catalogue raisonné*.

On these undisputed facts, no reasonable trier of fact could conclude that Wallace reasonably relied on any representation made by W&Co. about the authenticity of the painting was reasonable. Wallace had "the means available to him of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation" and was supposed to "make use of those means." *See ACA Galleries*, 928 F. Supp. 2d at 703.

Plaintiff's efforts to get around this are unconvincing. Wallace disputes that Moffett provided him advice on the sale; rather, he claims Moffett was retained merely to introduce him to the gallery and perform "ministerial tasks." (Dkt. No. 63, at 4). Of course this statement is inconsistent with other testimony in Wallace's deposition – testimony to the effect that Moffett was retained as a "consultant" on his acquisitions, which in plain English means a professional

---

[3] Unfortunately, the record before this Court does not include a full summary of Moffett's credentials and Moffett himself was obviously not available to be deposed in connection with this action because he died prior to its commencement.

hired to provide expert advice in a particular subject area (*see* "Consultant" in the Oxford English Dictionary, Cambridge English Dictionary, and Merriam-Webster Dictionary) and testimony that Moffett did in fact advise him as to the condition and provenance of the Painting and accompanied Wallace to view the Painting, all of which are more than merely performing "ministerial tasks." Plaintiff cannot create a genuine issue of fact by contradicting his sworn deposition testimony in his opposition papers. *See Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996). He certainly cannot do so by making an inherently implausible statement that he retained a respected curator from the Boston Museum of Fine Art to perform "ministerial tasks."

It thus remains undisputed that Wallace hired his own expert in connection with the sale. This plus the fact that W&Co. disclosed the Painting's absence from the Bonnard *catalogue raisonné* renders any suggestion of reasonable reliance unsupportable as a matter of law. As Defendant points out, even ordinary buyers understand the risks surrounding authenticity of works in the art market. Wallace had a fact sheet disclosing relevant information (the Painting's absence from the Bonnard *catalogue raisonné*) and the art expert on retainer who could have readily advised on the W&Co.'s disclosures and the Painting's authenticity. It would have been quite feasible for Wallace to verify that the Painting had not been authenticated. That Wallace ignored information and expertise available to him at the time of sale in favor of exclusive reliance on W&Co.'s representations that the Painting was a Bonnard is unreasonable as a matter of law.

## CONCLUSION

For the reasons discussed above, Defendant's motion for summary judgment is GRANTED and the Amended Complaint is dismissed with prejudice.

This constitutes the decision and order of the Court. It is a written opinion.

The Clerk of Court is respectfully directed to terminate the motion at Docket Number 57 and close the case.

Dated: May 9, 2022

_____
U.S.D.J.

BY ECF TO ALL COUNSEL